

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2007

# In re: Steven Perlin

Precedential or Non-Precedential: Precedential

Docket No. 06-3199

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In re: Steven Perlin " (2007). *2007 Decisions.* Paper 511.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/511

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3199

———————

IN RE: STEVEN JEFFREY PERLIN;
CRISTINE ANN PERLIN,

Debtors

v.

HITACHI CAPITAL AMERICA CORP.,

Appellant

———————

On Appeal from the United States Bankruptcy Court
for the Middle District of Pennsylvania
(D.C. Bankruptcy No. 06-bk-50033)
Bankruptcy Judge: Hon. John J. Thomas

———————

Argued April 12, 2007

BEFORE: SMITH and COWEN, Circuit Judges
and YOHN*, District Judge

(Filed August 3, 2007)

———————

*Honorable William H. Yohn Jr., Senior United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

1

Simon Kimmelman, Esq. (Argued)
Sterns & Weinroth
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, NJ 08607-1298

Counsel for Appellant Hitachi Capital
  America Corp.

Isaac J. Lidsky, Esq. (Argued)
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Counsel for Amicus-Appellant
  United States Trustee

Paul J. Winterhalter, Esq. (Argued)
1818 Market Street, Suite 3520
Philadelphia, PA 19103

Counsel for Appellees Steven Jeffrey Perlin
  and Cristine Ann Perlin

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

Hitachi Capital America Corporation ("Hitachi") appeals from the Bankruptcy Court's order denying its motion to dismiss the voluntary joint bankruptcy petition filed by Steven J. Perlin and Cristine A. Perlin under Chapter 7 of the Bankruptcy Code. Hitachi sought dismissal of the petition under 11 U.S.C. § 707(a), on the ground that the Perlins had filed the petition in bad faith. The Bankruptcy Court denied Hitachi's motion, reasoning that the Perlins had been truthful with the court and their creditors and had not engaged in the kind of manipulative

2

conduct at issue in *In re Tamecki*, 229 F.3d 205 (3d Cir. 2000). In considering the motion to dismiss, however, the Bankruptcy Court refused to consider the Perlins's substantial income and expenses as evidence of bad faith. The Bankruptcy Court reasoned that the negative implication of the substantial modifications made to section 707(b) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the 2005 Act"), Pub. L. No. 109-8, § 102, 119 Stat. 23 (2005), which created a presumption of abuse against debtors having primarily consumer debts who have sufficient income to repay their debts, is that a bankruptcy court may not consider a debtor's income and expenses in deciding a motion to dismiss brought under section 707(a).

In this appeal, which the Bankruptcy Court certified directly to us pursuant to 28 U.S.C. § 158(d)(2)(B), Hitachi challenges the Bankruptcy Court's refusal to consider the Perlins's high income and expenses in assessing good faith. As explained more fully below, we hold that in adjudicating a motion to dismiss asserting bad faith under 11 U.S.C. § 707(a), it is within the sound discretion of the bankruptcy court to consider a debtor's monthly income and expenses together with any other factors relevant to a debtor's good faith in filing for bankruptcy. Nevertheless, because we conclude that the facts and circumstances of this case do not support a finding of bad faith, we will affirm the Bankruptcy Court's order denying Hitachi's motion to dismiss.

I.

Dr. Steven J. Perlin is a licensed radiologist. In recent years, working only part-time, he has earned an annual income of approximately $370,000. At all relevant times, Dr. Perlin's wife, Cristine A. Perlin, owned and operated Centre Medical Imaging, LLC ("CMI"), the medical imaging company where Dr. Perlin practiced. Together, the Perlins expended a considerable amount of money on certain luxury items, such as two Lexus automobiles and private school tuition totaling $5,000 per month. In addition, they have saved more than $430,000 for their retirement.

In July of 2004, three months before CMI's opening, CMI entered into a lease agreement ("Lease") with Hitachi, whereby Hitachi leased to CMI medical diagnostic equipment and other property in exchange for the payment of rent. Dr. and Mrs. Perlin executed a personal guaranty ("Guaranty") in favor of Hitachi, whereby they agreed to guarantee CMI's obligations under the Lease subject to a limit of $1,271,588.00.

Under the Lease, CMI's payments were due on a graduated payment schedule. Under that schedule, CMI's monthly payments ranged from $2,000 in the first few months of the schedule to $70,000 beginning with the seventh month and continuing through the end of the Lease.

For the first six months of the schedule, CMI met its payment obligations in accordance with the terms of the Lease. During that time, however, CMI began experiencing financial difficulties. It failed to meet its own income projections and failed to pay Dr. Perlin a salary. Beginning with the seventh month and forward, CMI failed to generate sufficient cash flow to make the payments due under the Lease.

In February of 2005, CMI engaged a medical imaging consultant to reevaluate the income potential of the business. The consultant determined that the original income projections were flawed. Around the same time, CMI asked Hitachi to renegotiate the payment terms of the Lease on two separate occasions. Hitachi refused to do so.

In June of 2005, Hitachi advised CMI by letter that it had defaulted under the terms of the Lease by failing to make the payments due. After an agreed-upon period of forbearance, Hitachi demanded that CMI pay the full amount of the indebtedness under the Lease and that the Perlins pay the full amount of the Guaranty limit. CMI and the Perlins failed to pay the amounts owed.

On or about August 2, 2005, Hitachi filed suit against the Perlins and other defendants seeking repossession of the leased equipment and damages. Soon thereafter, the Perlins filed an answer to the complaint. On or about January 13, 2006, Hitachi

4

filed a motion for default judgment against CMI.  Days later, this bankruptcy case ensued.

## II.

On January 19, 2006, the Perlins filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code, seeking discharge of their obligation under the Guaranty, which stayed the litigation against them.  In response to the petition, Hitachi filed a motion to dismiss under 11 U.S.C. § 707(a), alleging that the Perlins had filed the petition in bad faith.  Hitachi claimed that the following factors supported a finding of bad faith:  (1) the Perlins had submitted allegedly misleading schedules to the court; (2) they had timed the filing of their bankruptcy petition around Hitachi's exercise of its legal rights against them; (3) they had artificially inflated their expenses in order to insulate their substantial income; (4) they enjoyed a substantial annual income and a lavish lifestyle, which included two luxury automobiles, private school tuition, and substantial retirement savings; and (5) they failed to make a good faith effort to repay Hitachi as an alternative to seeking discharge.

The Bankruptcy Court heard evidence and argument of counsel on Hitachi's motion to dismiss.  Applying the *Tamecki* framework, the Bankruptcy Court found that Hitachi had presented sufficient information to shift the burden to the Perlins to prove that their petition was brought in good faith.  Upon hearing testimony from the Perlins, the Bankruptcy Court concluded that the Perlins had met their burden of proving good faith and, therefore, denied the motion to dismiss.

In reaching its conclusion, the Bankruptcy Court reasoned that the Perlins had been "straightforward in their schedules," App. at 104, and "forthcoming with the Court and their creditors," *id.* at 107.  The Bankruptcy Court found that the Perlins's substantial expenses were "[a]ctual, but inflated."  *Id.* In addition, the Bankruptcy Court found that this case was distinguishable from *Tamecki*, where the debtor had manipulated the timing of his filing of his petition.  The Bankruptcy Court observed that it "d[id]n't see *Tamecki* factors here," *id.* at 108, and "d[id]n't see a manipulation," *id.*

5

With regard to the Perlins's substantial income and expenses, the Bankruptcy Court opined that based upon the legislative history to section 707(a) and our comments in *Tamecki*, a debtor's ability to repay is not, in and of itself, sufficient to support a bad faith finding. Moreover, going one step further, the Bankruptcy Court suggested that as a result of the recent amendments to section 707(b) made by BAPCPA, a bankruptcy court is now precluded from giving any consideration to a debtor's income and expenses in deciding a motion to dismiss brought under subsection (a) of section 707. Relying upon a theory of negative implication, the Bankruptcy Court opined that the newly-created presumption of abuse under section 707(b), which arises when a consumer debtor meets a specified income/expense test, excludes the possibility that a debtor's ability to repay may be considered under section 707(a). In assessing good faith, therefore, the Bankruptcy Court did not consider the Perlins's substantial income and high expenses.

Upon certification of the Bankruptcy Court, this Court granted Hitachi's petition, pursuant to 28 U.S.C. § 158(d)(2)(A), to appeal the Bankruptcy Court's order denying Hitachi's motion to dismiss as to the following issue: "Whether, in deciding a motion to dismiss for cause under 11 U.S.C. § 707(a), a bankruptcy court is prohibited from considering a debtor's monthly income and expenses when assessing a debtor's good faith in filing a bankruptcy petition."

III.

Section 707(a) provides, in pertinent part, that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause," and provides three non-exclusive examples of "cause" warranting dismissal. 11 U.S.C. § 707(a). Although a debtor's lack of good faith is not mentioned in the statute, in *Tamecki*, we held that a debtor's lack of good faith in filing a bankruptcy petition is a proper cause for dismissal under section 707(a). 229 F.3d at 207. Here, the Bankruptcy Court has certified the question of whether in assessing good faith under section 707(a), a bankruptcy court may consider a debtor's income and expenses, to which we turn below.

6

A.

The first issue we must decide is whether the newly-added provisions in section 707(b), which create a presumption of abuse against consumer debtors who have an ability to repay, imply that a bankruptcy court may not consider a debtor's income and expenses in adjudicating a motion to dismiss under section 707(a). Because the canon of negative implication does not apply in this case, as explained below, we conclude that the new provisions of section 707(b) do not impliedly prohibit a bankruptcy court from considering a debtor's income and expenses under section 707(a).

The principle that the enumeration of one case excludes another is a canon of statutory interpretation. The canon applies only when the expressed and unmentioned items are part of a "commonly associated group or series," *United States v. Vonn*, 535 U.S. 55, 65 (2002), "justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). In other words, the expressed item and the unmentioned item should be understood to go "hand in hand," thus supporting a sensible inference that Congress must have meant to exclude the unmentioned item. *Id.* (citation and internal quotation marks omitted). The canon is "only a guide, whose fallibility can be shown by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion of its common relatives." *Vonn*, 535 U.S. at 65; *see Burns v. United States*, 501 U.S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.").

By virtue of the 2005 Act, Congress enacted an income/expense test for consumer filings under section 707(b), and in doing so, has expressed a clear intention to permit bankruptcy courts to consider a consumer debtor's income and expenses in deciding a motion to dismiss under that subsection. Congress has not created an income/expense test for filings under section 707(a). The Bankruptcy Court suggested that Congress's singular expression of an intention to authorize

7

bankruptcy courts to consider income and expenses under section 707(b) justifies the inference Congress did not intend for bankruptcy courts to consider income and expenses under section 707(a).  As explained below, such an inference cannot be made because Congress has not treated consumer filings under section 707(b) and consumer/non-consumer filings under section 707(a) as part of a "commonly associated group or series." *Vonn*, 535 U.S. at 65.

As an initial matter, two separate subsections govern the dismissal of bankruptcy petitions filed under Chapter 7: subsection (a) governs the dismissal of all bankruptcy filings, when adequate "cause" has been shown, and subsection (b) governs the dismissal of only those bankruptcy filings involving primarily consumer debts, when granting relief would be an "abuse" of Chapter 7.  11 U.S.C. § 707(a), (b).  As indicated below, Congress codified these two subsections at different times and for different reasons.

Subsection (a) was enacted first, as part of the Bankruptcy Reform Act of 1978 (the "1978 Act").  At that time, there was no analogous provision to what is now subsection (b), relating only to consumer filings.  *See In re Padilla*, 222 F.3d 1184, 1194 (9th Cir. 2000); Pub. L. No. 95-598, 92 Stat. 2549 (codified as amended at 11 U.S.C. § 707(a)).  It was not until six years later that Congress added subsection (b) through the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act").  Pub. L. No. 98-353, 98 Stat. 333 (codified as amended at 11 U.S.C. § 707(b)).  Moreover, unlike subsection (a), subsection (b) was enacted as part of a package of consumer credit amendments in response to perceived abuses by consumer filers.  *See* 6 Collier on Bankruptcy, ¶ 707.LH[2] (Matthew Bender 15th ed., rev. 2006); *see also* S. Rep. No. 98-65 (1983) (observing that there had been a dramatic increase in the number of consumer bankruptcy case filings since the enactment of the 1978 Bankruptcy Act).  Hence, from a historical perspective, Congress has treated consumer filings under section 707(b) and consumer/non-consumer filings under section 707(a) differently, not as part of a package or "commonly associated group or series."  *Vonn*, 535 U.S. at 65.

Furthermore, the legislative history to the 2005 Act does not indicate that the modifications to section 707(b) imply anything about the dismissal of bankruptcy cases under section 707(a). As stated in the House report, the amendments were intended to "respond to many of the factors contributing to the increase in *consumer* bankruptcy filings, such as lack of personal financial accountability, the proliferation of serial filings, and the absence of effective oversight to eliminate abuse in the system." H.R. Rep. No. 109-31, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89 (emphasis added). The amendments to section 707(b) effectively tightened the dismissal procedures for consumer filings. There is no indication that Congress intended, contrarily, to restrict a bankruptcy court's discretion in deciding motions to dismiss under section 707(a).

In summary, we conclude that Congress would not have considered its treatment of dismissal procedures for consumer filings under section 707(b) "to go hand in hand" with the dismissal provisions under section 707(a). *See Peabody Coal*, 537 U.S. at 168 (citation and internal quotation marks omitted). As a result, we conclude that Congress's adoption of an income/expense test applicable to consumer filings under section 707(b) was not meant to signal any exclusion of income-and-expense factors from a bankruptcy court's consideration of motions to dismiss under section 707(a).

B.

Having concluded that the 2005 Act amendments to section 707(b) do not, by negative implication, preclude a bankruptcy court from considering income-and-expense factors in deciding whether to dismiss a bankruptcy petition under section 707(a), there remains the more salient question of whether consideration of income-and-expense factors is consonant with section 707(a) itself, as informed by our precedent and the legislative history.

Hitachi asserts that in deciding whether to dismiss a bankruptcy petition for lack of good faith under section 707(a), a bankruptcy court should consider a debtor's ability to repay his debts. Specifically, Hitachi contends that a bankruptcy court

9

should consider whether a debtor has substantial income or maintains a lavish lifestyle entailing excessive and continued expenditures, the adjustment of which would result in a substantial amount of net discretionary income. Hitachi posits that a debtor who has an ability to repay his debts is not the "honest but unfortunate debtor" that the Bankruptcy Code was intended to protect. In response, the Perlins contend that the legislative history to section 707(a) makes clear that in deciding whether to dismiss a petition for cause, a bankruptcy court may not consider a debtor's ability to repay his debts. For the reasons stated below, we hold that, in deciding a motion to dismiss under section 707(a), a bankruptcy court may consider a debtor's substantial income and expenses together with other factors in assessing good faith.

In answering a question of statutory interpretation, we normally begin with the statutory language, but because section 707(a) does not touch on the question presented, we will begin our analysis by looking to the legislative history to discern congressional intent. *See United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000) ("Where the statutory language does not express Congress's intent unequivocally, a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose."). Here, the House and Senate committee reports indicate that Congress did not intend for a debtor's ability to repay his debts to be adequate cause for dismissal of a bankruptcy petition:

> The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.

H.R. Rep. No. 95-595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6336; S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5880. As in *Tamecki*, we read the legislative history to mean that a debtor's ability to repay his debts out of disposable income is not a sufficient

10

reason to dismiss a bankruptcy petition under section 707(a).  As stated by one court, "[i]t is difficult to contemplate how Congress could more emphatically have stated that the debtor's net worth or future prospects is not 'cause' as the word is used in Section 707 for dismissal."  *In re Goulding*, 79 B.R. 874, 876 (Bankr. W.D. Mo. 1987).

While the legislative history makes clear that a debtor's ability to repay his debts is inadequate cause for dismissal, we do not read the history as prohibiting a bankruptcy court from considering a debtor's substantial income and expenses in determining whether the debtor filed his bankruptcy petition in good faith.  The legislative history establishes only that a debtor's ability to repay is an invalid cause for dismissal.  It does not indicate that a bankruptcy court must ignore the economic reality of a debtor's financial situation in determining whether a valid cause for dismissal exists.

As with the legislative history, we do not read our precedents as prohibiting a bankruptcy court from considering a debtor's income and expenses as part of a good faith analysis.  As noted above, in *Tamecki*, we held that a debtor's lack of good faith in filing a bankruptcy petition is a proper cause for dismissal under section 707(a).  229 F.3d at 207.  Although we stated that a debtor's "ability to repay is not in and of itself sufficient proof of bad faith," *id.* at 208, we did not rule out the possibility that a debtor's income may be considered as part of a good faith analysis.  Rather, we instructed that courts should assess a debtor's good faith on an "ad hoc basis," considering the "honest intention" of the debtor and "whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law."  *Id.* at 207.  Moreover, we emphasized that the good-faith determination rests within the sound discretion of the bankruptcy court.  *Id.*

Our non-restrictive approach in *Tamecki* reflects the fact-intensive nature of the good-faith inquiry.  An assessment of a debtor's good faith requires consideration of all of the facts and circumstances surrounding the debtor's filing for bankruptcy. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004) (Chapter 11 case) ("Whether the good faith

11

requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances' and determine where a 'petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'" (citation and internal quotation marks omitted)). Indeed, "[t]he facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *In re Bingham*, 68 B.R. 933, 935 (Bankr. M.D. Pa. 1987).

Of course, a bankruptcy court's discretion in making a good-faith determination is not without limitations. In *Tamecki*, we acknowledged certain limitations on that discretion. First, we noted that a finding of lack of good faith "should not [be] lightly infer[red]." 229 F.3d at 208. Second, we cautioned that dismissal should be "confined carefully" and utilized only in "egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Id*. (quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)); *see also* 229 F.3d at 209 ("[B]ankruptcy and district courts have reserved bad faith dismissal for the truly egregious case, often involving individuals with substantial means who have flaunted their wealth, have continued their lavish lifestyles, and are engaging in creative, elaborate schemes to conceal their assets and cheat their creditors or to otherwise inflict harm on third parties.") (Rendell, J., dissenting). But other than delineating these general limitations, we were careful not to restrict the bankruptcy court's discretion.

So too in this case, we favor an approach to the certified question that does not restrict a bankruptcy court's consideration of entire categories of facts and circumstances in a case, which restriction could lead to a skewed good-faith analysis. At the same time, however, to avoid undercutting congressional intent as expressed in the legislative history to section 707(a), we believe that articulation of some parameters to guide a bankruptcy court's consideration of income-and-expense factors is entirely appropriate.

As an initial matter, there are certain situations in which a bankruptcy court's consideration of income-and-expense factors

do not implicate the concerns Congress expressed in the legislative history.  One such example is where the bankruptcy court considers evidence that the debtor "concealed or misrepresented assets and/or sources of income."  *Tamecki*, 229 F.3d at 207 (internal quotation marks omitted); *see In re Marks*, 174 B.R. 37, 41 (E.D. Pa. 1994) ("Most instances of dismissal for bad faith filing under § 707(a) involve concealment, misrepresentation, or unexplained transfers to place assets beyond the reach of creditors." (citing cases)); *see also In re Brown*, 88 B.R. 280, 284 (Bankr. D. Hawaii 1988) (finding a lack of good faith where the debtor earned a substantial income and transferred the profits of his medical practice to avoid paying a malpractice judgment).  Another example is where a creditor raises allegations that the debtor has artificially inflated expenses to disguise a state of financial well-being.  *In re Keobapha*, 279 B.R. 49, 52 (Bankr. D. Conn. 2002) (internal quotation marks and citation omitted) (setting forth a variety of factors for bankruptcy courts to consider in assessing good faith).  As these examples illustrate, a bankruptcy court may properly and unqualifiedly consider a debtor's income and expenses as an analytical step in assessing allegations of debtor misconduct.

Hitachi also argues that a bankruptcy court should consider a debtor's substantial earnings and lavish lifestyle as evidence of a debtor's bad faith in filing a bankruptcy petition.  We agree that in deciding a motion to dismiss based upon a debtor's lack of good faith, a bankruptcy court may consider these factors together with any other facts and circumstances surrounding the debtor's filing for bankruptcy.  Our conclusion flows not only from the fact-intensive nature of the good-faith inquiry, *see Integrated Telecom Express,* 384 F.3d at 118, but also from our recognition in *Tamecki* that dismissal should be utilized only in "egregious cases that entail concealed or misrepresented assets and/or sources of income, *lavish lifestyles*, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence."  *Id.* (emphasis added) (quoting *Zick*, 931 F.2d at 1129).

However, to avoid undercutting congressional intent, a bankruptcy court's ultimate finding of bad faith may not be

13

based exclusively or primarily on a debtor's substantial financial means. Otherwise, dismissal would essentially be based upon a debtor's mere ability to repay, which is expressly prohibited by the legislative history. We note that several other courts have adopted a similar approach. *Compare McDow v. Smith*, 295 B.R. 69, 81 (E.D. Va. 2003) (holding that debtor's annual income of $454,000 and lavish lifestyle, which included annual private school tuition of $68,000, were insufficient cause for dismissal under section 707(a)), *with In re Cappuccetti*, 172 B.R. 37, 38-41 (Bankr. E.D. Ark. 1994) (finding that debtors filed Chapter 7 case in bad faith where in addition to the debtors' high income and expenses and lavish lifestyle, there were numerous inaccuracies and misstatements on their schedules and they had attempted to transfer assets out of reach from their creditors), *and In re Hammonds*, 139 B.R. 535, 542-43 (Bankr. D. Col. 1992) ("While some ability to repay debts is certainly not, in and of itself, adequate cause for dismissal of a Chapter 7 case . . . , when considered in conjunction with (1) the transfer of non-exempt corporate assets, without fair consideration, to Debtor's non-debtor spouse, (2) a continuing comfortable life-style, (3) a deliberate and persistent pattern of evading a single major creditor, (4) less than candid, full disclosure, and (5) Debtor's prior procedural gymnastics in Bankruptcy Court, this Court must find that the Debtor lacks the requisite good faith . . . [under § 707(a)].") *and In re Jones*, 114 B.R. 917, 926 (Bankr. N.D. Ohio 1990) (finding lack of good faith where the debtor could repay his debts, engaged in fraudulent conduct, and attempted to conceal income).

As these cases illustrate, although a debtor's ability to repay is not, itself, sufficient cause for dismissal, "[w]hen a debtor capable of at least partial repayment has made every effort to avoid payment of an obligation, lack of good faith sufficient to justify dismissal may be found." *Zick*, 931 F.2d at 1127 n.3 (citation, internal quotation marks, and brackets omitted). Indeed, we need look no further than the facts in *Tamecki* for a good example of this principle. 229 F.3d 205.

In *Tamecki*, the debtor had filed for Chapter 7 protection seeking the discharge of approximately $35,000 in credit card debt. *Id*. at 206. The trustee sought dismissal of the debtor's

14

petition for lack of good faith under section 707(a), arguing that the debtor acted in bad faith in filing his petition while knowing that he would soon be in a position to repay his debts. *Id.* at 206-07. The bankruptcy court granted the trustee's motion and entered an order dismissing the case for lack of good faith, and the district court affirmed. *Id.* at 207. After applying a burden-shifting framework, we too affirmed. *Id.* at 208. In affirming, we explained that while a debtor's ability (or, as in that case, future ability) to repay his debts is not itself sufficient proof of bad faith, there were two aggravating facts which had the effect of shifting the burden to the debtor, namely, the reasonableness of the debt accrual and the timing of filing. *Id.* First, when the debtor accrued the $35,000 debt, he was earning a small amount of income and did not have an urgent need to accrue a large consumer debt. *Id.* at 207. Second, at the time of filing for bankruptcy, the debtor was involved in a divorce proceeding which would soon leave him with approximately $50,000. *Id.* Based upon those circumstances, we concluded that there was no error in the bankruptcy court's ruling that the debtor failed to prove good faith. *Id.* at 208.

Hence, as *Tamecki* illustrates, in deciding a motion to dismiss based upon a debtor's lack of good faith, a bankruptcy court may consider all of the facts and circumstances surrounding the debtor's filing of the bankruptcy petition, including the reality of the debtor's financial situation.

For all of the foregoing reasons, we conclude that, in deciding a motion to dismiss under section 707(a), a bankruptcy court may consider a debtor's income and expenses together with other factors in assessing good faith. The recent modifications to counterpart-section 707(b) do not impliedly preclude a bankruptcy court from considering income-and-expense factors, and, as discussed and qualified above, consideration of income-and-expense factors is consonant with section 707(a) itself.

## C.

Although a bankruptcy court may consider a debtor's income and expenses in assessing whether a debtor filed a

15

bankruptcy petition in bad faith, we conclude that no reasonable factfinder would find that the evidence in this case demonstrates bad faith.  There is no evidence that the Perlins schemed to conceal or misrepresent income, inflated  their expenses to hide income, filed misleading statements or schedules in an effort to defraud their creditors, unduly interfered with the judicial process, or engaged in any other misconduct.  On the contrary, the Bankruptcy Court found that the Perlins were "straightforward in their schedules" and "forthcoming with the Court and their creditors," and Hitachi has not appealed these factual determinations.  Furthermore, unlike the debtor in *Tamecki*, the Perlins did not time the filing of their bankruptcy petition to shield a future source of income.  Likewise, the accrual of their debt to start a medical imaging company, which had a business plan with definite income projections, was not unreasonable.

Although, it is true, that the Perlins have a substantial income and a comfortable lifestyle, those factors are insufficient, at least in this case, to demonstrate their bad faith in filing the bankruptcy petition.  Hence, we ultimately agree with the Bankruptcy Court that this is not the kind of "egregious case" which warrants dismissal for lack of good faith under § 707(a).

IV.

For the foregoing reasons, we will affirm the Bankruptcy Court's order denying Hitachi's motion to dismiss.

16