In re Mahmoud S. **RAHIM** and Raya H. Abdulhussain, Debtors.

No. 10–57577–R.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Dec. 16, 2010.

Stuart A. Gold, Gold, Lange & Majoros, PC, Jason Patrick Smalarz, Southfield, MI, for Debtor.

Mark H. Shapiro, Tracy M. Clark, Southfield, MI, for Trustee.

Scott Seabolt, Katherine Catanese, Adam Wienner, Foley & Lardner LLP, Detroit, MI, for Pacifica Loan Four, LLC.

Todd Grant, Richard E. Segal & Associates, P.C., West Bloomfield, MI, for David Bartley.

*Order Granting Creditors' Motions to Dismiss Under 11 U.S.C. § 707(a)*

STEVEN RHODES, Bankruptcy Judge.

The issue before the Court is whether the debtors, who earn, and spend, over $509,000 per year, are entitled to relief under chapter 7 of the bankruptcy code. The Court concludes that the answer is no. Accordingly, the Court finds that there is "cause" to dismiss this case under 11 U.S.C. § 707(a). The case is therefore dismissed.

## I. The Debtors' Income

The debtors' schedule I discloses income of $39,400 per month from their joint medical practice.[1] However, that disclosure does not include the income imputed as a result of the monthly payments on the debtors' three vehicles that the debtors' medical practice pays on their behalf.[2] These payments are $800 per month each for two Mercedes and $426 for a BMW. Schedule I also does not include the income necessary to fund payments of $1000 per month that the debtors pay to support a niece and that is not disclosed on schedule J. Thus, the debtors' total monthly income is at least $42,446 and their yearly income is at least $509,352.[3]

## II. The Debtors' Expenses

Schedule J discloses the following monthly expenses for the debtors' primary residence:

| | |
|---|---|
| Mortgage payment | $13,219 |
| Second mortgage payment | $ 1,284 |
| Electricity and heating fuel | $ 541 |
| Water | $ 145 |
| Telephone | $ 57 |
| Landscape | $ 132 |
| Cable and internet | $ 220 |
| Association dues for personal residence | $ 26 |
| Alarm | $ 20 |
| Trash | $ 28 |
| Snow removal | $ 42 |
| Total | $15,714 |

Schedule J discloses the following monthly expenses for a Florida home:

| | |
|---|---|
| Mortgage payment | $3,084 |
| Association dues | $1,833 |
| Electricity | $ 30 |
| Total | $4,947 |

Schedule J discloses the following monthly expenses for a rental home:

| | |
|---|---|
| Mortgage on rental home | $1,996 |
| Association dues for rental property | $ 13 |
| Water for rental home | $ 17 |
| Second mortgage payment | $ 608 |
| Total | $2,6344 |

Schedule J also discloses the following extraordinary expenses:

| | |
|---|---|
| Comcast for mother-in-law | $ 89 |
| Food | $1,500 |
| Recreation | $ 320 |
| Care of elderly mother | $ 540 |
| Education expenses for two children | $4,575 |

Schedule J discloses total expenses of $39,380, leaving only $20 of monthly net income. However, as noted, schedule J does not disclose the payments totaling $2,046 on the debtors' three vehicles and $1,000 for the support of the niece. It also does not include whatever expenditures the debtors make with their additional withdrawals from their medical practice. Thus, the debtors' expenses are at least $42,426 per month, or $509,112 per year.

## III. The Debtors' Liabilities

Schedule D discloses secured debts of $3,417,423 on the debtors' three homes and their commercial building.

Schedule F discloses unsecured claims of $6,671,939. These are mostly on account of guaranties of failed real estate investments in Florida. According to this schedule, the debtors owe David Bartley, one of the movants, $329,485, and they owe Pacifica Loan Four LLC, the other movant, $3,815,352.[5]

1. Dr. Rahim testified that he expects some decrease in income due to the economics of health care as well as his wife's illness. However, he gave no specific estimate and his testimony was uncorroborated on both points. The Court finds that his testimony on this point lacked credibility.

2. There was no evidence that these vehicles are used for business purposes.

3. Schedule I also does not include additional income that the debtors irregularly withdraw from their business in varying but significant amounts. The amount of this additional income could not be readily determined from the meager records that the debtor produced at the evidentiary hearing on the motion.

4. The debtors receive monthly rent of $2,400 on this property, as disclosed on schedule I. Accordingly, it is a drain on their other income to the extent of $234 per month.

5. Because the debtors' debts are primary business debts, § 707(b) of the bankruptcy code does not apply.

## IV. "Cause" to Dismiss

■ The determination of whether the record establishes "cause" to dismiss a case under 11 U.S.C. § 707(a)is committed to the sound discretion of the Court. *Indus. Ins. Servs. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir.1991) ("A bankruptcy court decision to dismiss pursuant to 11 U.S.C. § 707(a) will be reversed only for abuse of discretion."). In that case, the Sixth Circuit observed that the several circumstances that § 707(a) identifies as constituting "cause" for dismissal are not exclusive. The court stated, "We are satisfied that the word 'including' is not meant to be a limiting word." *Id.*

■ The court went on to hold, "We are persuaded that there is good authority for the principle that lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *Id.* at 1127. Particularly instructive in this case is the following from *Zick*:

> We believe the following language from *In re Krohn*, 886 F.2d 123 (6th Cir.1989), *aff'g* 87 B.R. 926 (Bankr. N.D.Ohio 1988), while dealing with § 707(b) of the Code, is instructive also as to § 707(a):
>
>> Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor.
>>
>> . . . .
>>
>> The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide for an equitable distribution to creditors. The debtor herein, although he has minimal as-

sets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis.
>
> 886 F.2d at 126, 127–28.

*Id.* at 1128. In *Krohn*, the Sixth Circuit further held, "Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings.... That factor alone may be sufficient to warrant dismissal." 886 F.2d at 126 (citations omitted).

■ Accordingly, the Court concludes that in both *Zick* and *Krohn*, the Sixth Circuit held that a debtor's continuing lavish lifestyle would support a finding of bad faith sufficient to warrant dismissal under § 707(a).

## V. Applying *Zick* in This Case

■ The Court finds that this case was not filed in good faith and that therefore there is cause to dismiss. The debtors' monthly expenses of at least $42,426 reflect a lifestyle that can only be described as extravagant and lavish. It is certainly unprecedented in this Court's experience in chapter 7 cases. By any objective measure, the debtors simply do not need chapter 7 relief.[6] Moreover, granting chapter 7 relief to them would be extraordinarily unfair to their creditors. If they would take the steps necessary to reduce their yearly expenses to, for example, half ($255,000—still an extraordinary expense budget for a family of four in bankruptcy), they could commit the other half to a five year chapter 11 plan that would pay their creditors over $1,000,000. If they further reduced their yearly expenses to a more modest, but still comfortable, $150,000, the dividend to creditors might be $1,800,000.

---

6. The Court further concludes that allowing bankruptcy relief to these debtors would also be unfair to every other debtor in bankruptcy. All of their expense budgets are closely scruti-nized regardless of chapter and each of them has made or is compelled to make difficult choices about their expenses as a condition of getting bankruptcy relief.

However, the record reflects that the debtors have made no effort whatsoever to reduce their expenses.[7] Like the debtor in *Krohn*, these debtors have done nothing to "tighten their belts." *Id.* at 128. Indeed, the present case brings considerations of ability to pay and continuing lavish lifestyle to a new order of magnitude that simply cannot be condoned. It is truly an "egregious" case. *See Zick*, 931 F.2d at 1129.[8] The debtors are not "hopelessly adrift in a sea of debt." *Id.* at 1129 (quoting *McLaughlin v. Jones (In re Jones)*, 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990)).

### VI. The Debtors' Defense

■ It is significant that the debtors did not attempt to argue that they are unable to repay a meaningful portion of their debts through a chapter 11 plan or otherwise. Such an argument would have been frivolous. Many of their monthly expenses simply cannot be justified as reasonably necessary for the support of their family, including: $15,714 for their primary residence; $4,947 for their vacation home in Florida; $2,634 for their rental property that has a negative cash flow; $1,500 for food; $320 for recreation; $4,575 for private school; and $2,046 for three luxury vehicles. Dr. Rahim gave no testimony to justify any of these expenses.

Rather, the debtors' only substantial defense to the motion is that because their debts are business debts rather than consumer debts, ability to pay, on its own, is not sufficient to establish their bad faith. Specifically, they argue that only a con-

sumer case can be dismissed based on ability to pay because § 707(b) authorizes such a dismissal only in a consumer case. They further argue that § 707(a) does not authorize the dismissal of a chapter 7 case based on ability to pay.

In support, the debtors rely on *Perlin v. Hitachi Capital Am. Corp.*, 497 F.3d 364 (3d Cir.2007). In that case, the Third Circuit agreed with the Sixth Circuit's holding in *Zick* that a lack of good faith can constitute "cause" to dismiss under § 707(a). *Id.* at 369. The Third Circuit also held that § 707(b) does not by implication "prohibit a bankruptcy court from considering a debtor's income and expenses under section 707(a)." *Id.* at 370. The Third Circuit summarized the basis for this conclusion as follows:

> In summary, we conclude that Congress would not have considered its treatment of dismissal procedures for consumer filings under section 707(b) "to go hand in hand" with the dismissal provisions under section 707(a). *See Peabody Coal*, 537 U.S. at 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (citation and internal quotation marks omitted). As a result, we conclude that Congress's adoption of an income/expense test applicable to consumer filings under section 707(b) was not meant to signal any exclusion of income-and-expense factors from a bankruptcy court's consideration of motions to dismiss under section 707(a).

7. Dr. Rahim testified at length at the evidentiary hearing, but none of that testimony addressed this issue.

8. The facts in the present case are somewhat similar to the facts in the unpublished decision in *Merritt v. Franklin Bank (In re Merritt)*, 2000 WL 420681 (6th Cir.2000). There, the debtor and his non-filing spouse had annual income of $156,000, and several assets with substantial equity. The bankruptcy court

granted a motion to dismiss under § 707(a). After the court stated, "Merritt enjoys a lavish lifestyle[,]" and after it reviewed the other circumstances of the case, it found that the debtor's efforts were directed toward avoiding his debts. Accordingly, the Sixth Circuit affirmed, concluding, "it was not an abuse of discretion to dismiss his petition pursuant to § 707(a)." *Id.* at *3–4.

*Id.* at 371. Thus, the Third Circuit rejected the first of the debtors' two arguments.

The Third Circuit did, however, agree with the debtors' second argument. Relying on legislative history, the Third Circuit held that "a debtor's ability to repay his debts out of disposable income is not a sufficient reason to dismiss a bankruptcy petition under section 707(a)." *Id.* at 372.[9] The court held, "[A] bankruptcy court's ultimate finding of bad faith may not be based exclusively or primarily on a debtor's substantial financial means. Otherwise, dismissal would essentially be based upon a debtor's mere ability to repay, which is expressly prohibited by the legislative history." *Id.* at 374.

There are three difficulties with the debtors' reliance on the Third Circuit's decision in *Perlin*. The first is that *Perlin* is inconsistent with the Sixth Circuit's decision in *Zick*. As discussed above, *Zick* quoted and relied on language in *Krohn* in holding that § 707(a) does authorize dismissal of a chapter 7 case filed by a debtor whose debts are primarily business debts when the debtor does not need bankruptcy relief.

Second, *Perlin* is inconsistent with the Supreme Court's uniform pronouncements that bankruptcy is for the "honest but unfortunate debtor." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).[10] There is nothing either honest or unfortunate about a debtor who, though able, chooses not to pay a meaningful dividend to his creditors through chapter 11, chapter 13, or otherwise. And that is so whether a debtor's debts are business debts or consumer debts.

In *Perlin,* the debtors' annual income was $370,000. According to the Third Circuit, they "expended a considerable amount of money on certain luxury items, such as two Lexus automobiles and private school tuition totaling $5,000 per month. In addition, they have saved more than $430,000 for their retirement." 497 F.3d at 367–68. In applying the legislative history rather than the binding precedent from the Supreme Court, the Third Circuit never found that the Perlins were "honest but unfortunate." Nor could it. There is nothing "unfortunate" about an annual income of $370,000 or owning two Lexus automobiles. There is nothing "honest" about debtors who can pay a substantial portion of their debt but choose not to, and for no just reason. The debtors in *Perlin* did not treat their creditors with any

---

**9.** The Third Circuit summarized and quoted from the legislative history as follows:

> Here, the House and Senate committee reports indicate that Congress did not intend for a debtor's ability to repay his debts to be adequate cause for dismissal of a bankruptcy petition:
>
> > The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.
>
> H.R.Rep. No. 95–595, at 380 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6336; S.Rep. No. 95–989, at 94 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5880.

*Id.* at 372.

**10.** *See also Brown v. Felsen,* 442 U.S. 127, 128, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767 (1979) ("By seeking discharge, however, respondent placed the rectitude of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the 'honest but unfortunate debtor.' ") (citation omitted); *Kelly v. Robinson,* 479 U.S. 36, 46, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986); *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Cohen v. de la Cruz,* 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998); *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 381, 127 S.Ct. 1105, 1115, 166 L.Ed.2d 956 (2007).

measure of fairness. The *Perlin* decision is inconsistent with fundamental bankruptcy policy, as articulated by the Supreme Court, and is therefore unpersuasive.

■ The third difficulty with the debtors' reliance on *Perlin* is that its reference to legislative history was inappropriate. The Supreme Court has cautioned, "But it is the statute, and not the Committee Report, which is the authoritative expression of the law[.]" *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994). And the Sixth Circuit has added, "Committee Reports are unreliable 'as a genuine indicator of congressional intent[.]' " *Princeton Univ. Press v. Michigan Document Servs., Inc.* 99 F.3d 1381, 1411 (6th Cir. 1996).[11] If Congress fully intended to allow chapter 7 relief to a debtor with primarily business debt regardless of income, expenses, ability to pay or lack of need, surely it would have so stated explicitly in the bankruptcy codè. It would not have left such an important exception to fundamental bankruptcy policy to a sentence buried in legislative history. It is much more likely that Congress meant in § 707(a) what it said: A bankruptcy court may dismiss *any* chapter 7 case for cause.

For these reasons, the Court rejects the debtors' reliance on the Third Circuit's decision in *Perlin.*

## VII. The Trustee's Position

The trustee did not file a formal objection to the motion. However, the trustee's attorney appeared at the initial hearing and then testified at the evidentiary hearing. Her point in both instances was that there are substantial assets that can be administered for the benefit of creditors. At the evidentiary hearing, she estimated that at least $200,000 worth of assets could be administered.

Nevertheless, it is clear that a chapter 11 plan would distribute much more to creditors than would chapter 7 administration, as would the creditors' garnishment and executions remedies under state law. Accordingly, the Court concludes that the availability of assets for administration in chapter 7 does not undermine the Court's finding of cause to dismiss.

## VIII. Conclusion

There is cause to dismiss this bankruptcy case under 11 U.S.C. § 707(a). The debtors did not file their case in good faith. Their annual income of over $500,000 compels the conclusion that they could pay a meaningful dividend to their creditors if they would make the effort to reduce their lavish expenses that fairness to their creditors requires. Nothing in the bankruptcy code suggests that a debtor who has primarily business debts but who can pay those debts is entitled to chapter 7 relief.[12]

The case is dismissed.

---

11. *See also Colorado River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C.Cir.2006) ("[A] committee report is not law[.]"); *ACLU v. FCC*, 823 F.2d 1554, 1569, (D.C.Cir.1987) ("[T]he fact remains that committee reports, even authoritative committee reports, are not law.") (footnote omitted).

12. *See also* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to ... prevent an abuse of process.").