**In re Roy G. PEDIGO, Debtor.**

**No. 02–91934–BHL–7.**

United States Bankruptcy Court,
S.D. Indiana,
New Albany Division.

April 1, 2003.

David C. Ollis, New Albany, IN, for debtor.

## ORDER

BASIL H. LORCH, III, Bankruptcy Judge.

This matter came before the Court on the **United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(a) and (b)** filed on November 6, 2002. The Debtor answered the Trustee's motion with his **Response and Objection to Motion to Dismiss** on November 25, 2002, and supplemented that response with a **Memorandum in Support**. The Court held a hearing on January 15, 2003, at which time the parties appeared, made arguments and presented evidence. At the conclusion of the hearing the Court took the matter under advisement allowing the parties to submit post-hearing Memoranda. Having considered the foregoing and being otherwise fully advised, the Court hereby **DENIES** the United States Trustee's Motion to Dismiss in accordance with the attached Memorandum.

### Memorandum

At the heart of the Court's determination of the present Motion lies the proper boundary between 11 U.S.C. § 707(a) and (b). Section 707 authorizes dismissal of a chapter 7 case under two different sets of circumstances. Section 707(a) allows dismissal only for "cause" and enumerates three examples that constitute "cause:" (1) unreasonable delay by the debtor that is prejudicial to creditors, (2) nonpayment of any fees or charges required under chapter 123 of title 28, and (3) failure of the debtor in a voluntary case to file the information required by paragraph (1) of § 521. Section 707(b) authorizes dismissal in cases of "substantial abuse" in cases involving individual debtors whose debts are primarily consumer debts.

It is commonly understood that the enumerated examples cited in section 707(a) are not an exhaustive list of the factors constituting "cause," *In re Padilla*, 222 F.3d 1184, 1192 (9th Cir.2000), but are in the nature of guidelines. In fact, the statutory notes proceeding section 707 specifically note:

> ... These causes are not exhaustive, but merely illustrative. The section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy. Senate Report No. 95–989.

The statutory language, being illustrative, serves to demonstrate the types of conduct which warrants dismissal. Because all the cited examples of "cause" are of a technical or procedural nature, it seems logical to conclude that Congress drafted this provision to enforce the technical and procedural requirements of Chapter 7.

Section 707(b) did not exist when the Code was enacted. Congress added the language now found in subsection (b) in the Bankruptcy Amendments and Federal Judgeship Act of 1984.[1] That subsection introduced the concept of "substantial abuse" into section 707 in an effort to address perceived abuses of the existing law and curb the precipitous rise in personal bankruptcies. That language was carefully crafted to vest the court with the authority, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, to dismiss a case filed by an individual debtor under chapter 7 whose debts are primarily consumer debts if granting of relief would be a substantial abuse of the Bankruptcy Code.

---

1. Pub.L.No. 98–353, S 312, 98 Stat. 333, 355.

Since the introduction of section 707(b), courts have utilized various tests to establish substantial abuse. While the scope of those cases is fairly broad, subsection (b) provides no relief to creditors who lack standing and applies only to those debtors with primarily consumer debt. Naturally, these restrictions have led creditors and trustees to pursue broader relief elsewhere. By inferring a good faith requirement for chapter 7 debtors, many courts have been willing to overlook legislative history and ignore principals of statutory construction, thereby manipulating § 707(a) to hold that bad faith may constitute "cause" for dismissal. *See, e.g., In re Zick,* 931 F.2d 1124, 1127 (6th Cir.1991); *In re Kempner,* 152 B.R. 37, 39 (D.Del. 1993); *In re Hammonds,* 139 B.R. 535, 541 (Bankr.D.Colo.1992).

The archetype of section 707(a) does not indicate, however, that filing for chapter 7 in bad faith should constitute "cause" for dismissal. Neither does section 707(a) suggest that Congress intended that subsection to subsume section 707(b) by incorporating (b)'s concept of dismissing a case when "granting relief would be a substantial abuse of the provisions of this chapter."

### Bad Faith Does Not Constitute "Cause" for Dismissal

■ Congress, when it so desires, knows how to require good faith in connection with a bankruptcy case, and that is by writing the requirement into the Code. *See* §§ 1129(a)(3), 1225(a)(3), 1325(a)(3). No such language appears in section 707. This is not an accidental omission, but rather is tied to the difference between a liquidation and a reorganization. It is not the role of bankruptcy courts to rewrite the Code. Congress, albeit with much difficulty, has taken on that task.

Admittedly, the majority of courts would disagree and have, in fact, found that bad faith does constitute cause for dismissal under section 707(a).[2] These decisions, however, cite to chapters 11, 12, and 13 cases, where good faith is written into the Code, for the analogy that good faith should be an implied requirement in all filings. While this Court agrees that a chapter 11 or 13 debtor must propose his or her payment plan in good faith in order for a court to confirm it, the policy reasons behind this requirement do not exist in the chapter 7 context. The reorganization chapters of the Code require an ongoing relationship between the debtor and his creditors. As such, the debtor must "approach its new relationship with the creditors in good faith." *Padilla,* 222 F.3d at 1192. Chapter 7 liquidation does not require an ongoing debtor-creditor relationship. A reorganizing debtor retains its assets while a liquidating debtor forfeits all his non-exempt assets. A debtor's proposal to surrender his non-exempt assets in exchange for a discharge has nothing to do with his motive for doing so. *See, e.g., In re Montevallo Mining Co.,* 278 F. 989, 990 (M.D.Ala.1922):

---

**2.** The Trustee notes the following badges of bad faith other courts have relied upon to justify dismissal for cause: (1) The filing seems intended to dispose of only one or two creditors. *In re Zick,* 931 F.2d 1124 (6th Cir.1991); (2) The debtor filed in response to a judgment, to pending litigation, or to collection action. *In re Emge,* 226 B.R. 396 (Bankr. W.D.Ky.1998); (3) The debtor made no effort to repay debts. *Id.;* (4) The debtor manipulated information on the schedules to obtain a particular result. *In re Solomon,* 277 B.R. 706 (Bankr.E.D.Tex.2002); (5) The debtor failed to make lifestyle adjustments to repay creditors. *In re Smith,* 229 B.R. 895 (Bankr. S.D.Ga.1997); and (6) The debtor had sufficient resources to pay some or all of the debts. *In re Miller,* 263 B.R. 183 (N.D.N.Y. 2001).

The motive with which a lawful act is done is of no controlling importance, for it is fundamentally sound to say that a lawful act cannot be rendered unlawful, although prompted by an unworthy motive ... [I]f the bankrupt, however solvent, or however impure its motive may have been, or whatever may have been the actuating purpose, saw fit to surrender its assets into the custody and jurisdiction of the court for the benefit of its creditors, the creditors as a matter of law have no cause for complaint.

*Id.* at 990.

Such an interpretation of the Code does not open the floodgates for "bad faith" filings in a chapter 7. It simply forces the complaining creditor to utilize the specific bankruptcy provision applicable to the perceived abuse. For instance, a debtor's fraud as to a particular creditor may result in an exception from discharge of that debt under section 523. A debtor's abuse of the bankruptcy process itself may result in a denial of discharge under section 727. Interestingly, a petition filed in "bad faith" in a chapter 13 proceeding may lead to conversion to a chapter 7.

*§ 707(a) Does Not Incorporate § 707(b)'s Concept of "Substantial Abuse"*

■ Congress also did not intend to include "substantial abuse of the provisions of this Chapter" as an example of "cause." This is the language contained within section 707(b), and that subsection has been most commonly used as a mechanism to force debtors who have the ability to pay their debts into a chapter 13. As stated hereinabove, before the addition of section 707(b) in 1986, "the ability of the debtor to repay his debts in whole or part ... [did] not constitute adequate cause for dismissal ...." *In re Carroll,* 24 B.R. 83, 86 (Bankr. N.D.Ohio 1982)(citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 380 (1977);

S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978); U.S.Code & Admin.News 1978, pg. 5787). Based on this reasoning, many courts have held that "[i]f Congress had wanted a 'substantial abuse' provision in § 707(a) they could have inserted it as they did in § 707(b), but they did not do so." *In re Etcheverry,* 221 B.R. 524, 525 (Bankr.D.Colo.1998); *accord In re Green,* 49 B.R. 7, 8 (Bankr.W.D.Ky.1984); *In re Young,* 92 B.R. 782, 784 (Bankr.N.D.Ill. 1988); *In re Goulding,* 79 B.R. 874, 876 (Bankr.W.D.Mo.1987).

■ It is a cardinal principle of statutory construction that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251, (2001) (internal quotation marks omitted). If section 707(a) were read to include "substantial abuse" as an example of "cause," section 707(b) would have no substance. Because interpreting section 707(a) to include section 707(b)'s concept of "substantial abuse" would render section 707(b) "insignificant, if not wholly superfluous," *Duncan,* 533 U.S., at 174, 121 S.Ct. 2120, and because a court should be "reluctant to treat statutory terms as surplusage in any setting," *id.,* this Court declines to do so. The authority to dismiss a case on the premise that granting relief would be a "substantial abuse of the provisions of this Chapter" resides solely in section 707(b). And as the Code specifies, that authority is conditioned by the presumption in favor of granting relief, and may only be applied to individuals whose debts are primarily consumer debts.

■ Thus, the boundary between the two subsections is this: section 707(a) authorizes a dismissal for the debtor's failure to comply with bankruptcy procedures and is not conditioned on that debtor's motive

for filing, and section 707(b) authorizes a dismissal for "substantial abuse [3]" only as to an individual whose debts are primarily consumer debts. Further limitations on an individual's right to choose a course of liquidation must await future legislation. The Court will now determine whether the Debtor in this case ["Pedigo"] should be dismissed under either section 707(a) or (b).

## Analysis
### § 707(a)

The United States Trustee argues that Pedigo should be dismissed from bankruptcy pursuant to section 707(a) because he "filed this Chapter 7 case in bad faith ...." UST Motion to Dismiss at 2. The Trustee asserts that Pedigo's primary purpose of the bankruptcy was to defeat the collection efforts of one creditor while maximizing his equity in exempt property (by continuing to pay down his mortgages). Pedigo's six (6) vehicles, his newly acquired property, and a suspect obligation Pedigo claimed as a business debt to his mother-in-law for $91,000, are cited to support the Trustee's theory that Pedigo filed in bad faith. As discussed above, this Court does not find statutory authority to examine the Debtor's motives for filing chapter 7 and declines to read "bad faith" as "cause" under section 707(a). Without "cause" there is no basis for dismissal under section 707(a).

### § 707(b)

The Trustee also seeks dismissal pursuant to section 707(b) on the grounds that granting relief "would constitute substantial abuse of the Bankruptcy Code," UST Motion to Dismiss at 4, primarily because Pedigo has disposable income with which to fund a chapter 13 plan. Such is the customary argument made in order to show substantial abuse, but the Code requires that this argument be made only against those debtors "whose debts are primarily consumer debts ...."

Section 101(8) defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." This is to be contrasted with "debt incurred for a business venture or with a profit motive," which is not consumer debt. *In re Runski,* 102 F.3d 744, 747 (4th Cir.1996); *accord In re Booth,* 858 F.2d 1051, 1055 (5th Cir.1988) ("[T]he test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit"); *In re Panaia,* 65 B.R. 865, 869 (Bankr.D.Mass. 1986) (holding that "debts incurred on real property for business purposes cannot be consumer debts"). Furthermore, the word "primarily" has generally been construed as meaning at the very least a majority. *See In re Stewart,* 175 F.3d 796 (10th Cir.1999)("primarily" means over 50% of debt); *In re Kelly,* 841 F.2d 908, 913 (9th Cir.1988) (holding that when "more than half ... of the dollar amount owed is consumer debt, the statutory threshold is passed"); *but see In re Booth,* 858 F.2d 1051, 1055 (5th Cir.1988) ("consumer debts should be evaluated not only by amount, but by their relative number").

Resolution hinges upon the proper categorization of Pedigo's $80,000 mortgage on his newly acquired property that backs up against his current residence. The Trustee argues that this debt must be construed as consumer because it was incurred for

---

**3.** Although a debtor's ability to pay his or her debts is a factor to consider in determining whether to dismiss or convert under § 707(b), that factor does not constitute substantial abuse *per se.*

personal reasons. Namely, the Trustee believes that the "property merely expands the Pedigo homestead ... [and] was not made with profit as a primary motive." UST Motion to Dismiss at 5. Although Pedigo expected to make some profit from leasing the residence on that property, the argument goes, such profit would only be incidental to his desire to improve his own home by expanding the homestead in a manner that provided him protection from his creditors. The Trustee also provided authority for the proposition that expenses for purchasing or improving a home are consumer debts, *See In re Kelly*, 841 F.2d 908 (9th Cir.1988); *In re Palmer*, 117 B.R. 443 (Bankr.N.D.Iowa 1990), and suggests that "[a] better articulation of the test for non-consumer debt is whether the debtor is or has been actually engaged in any business and whether the debt relates to that business." UST Memorandum in Support of Motion to Dismiss at 6.

■ The Court disagrees with the Trustee's assertion that Pedigo's primary intention was to improve his own home. Pedigo testified that his primary intent for purchasing the property was to supplement his income during retirement by leasing the new property to tenants. After months of extensive renovations to the house that sits on the new property, Pedigo hired a property management firm to locate suitable tenants and finally signed an out-of-state family for a one year term. He candidly acknowledged the added convenience the new property afforded him by allowing him access to the street through his own backyard, but he maintained that the primary reason for the purchase was to supplement his income. Pedigo stated, "why would I go and borrow an amount of money equal to the amount of my savings—when I'm 64—just so that I can cut grass [4]?" The Court found his testimony to be credible and, given Pedigo's age, savings, and health, the Court finds it more likely that his primary intention for the purchase was to earn income.

Pedigo neither occupies nor uses the new property as his principal or primary residence. Rather, he leased it out after months of renovations designed to attract tenants. While it is true that he receives the benefit of accessing his own home from the backyard, the Court finds that any motivation to buy the new property for this benefit was secondary to his desire to earn income. Pedigo has had many business ventures, some successful, some not, and the Court views his purchase of the new property in kind. Although the new property provides him ancillary benefits in the nature of home improvement and convenience, the evidence shows that Pedigo purchased the property in question as a business investment.

Secondly, without adopting the merits of the Trustee's suggested test for non-consumer debt, it is clear that Pedigo passed nevertheless. Pedigo *is* engaged in the business of being a landlord, having signed two different tenants, and the debt in question arose directly from that venture. Therefore, having already determined that his primary intention for purchasing the property was business oriented, and having been presented evidence that the property is in fact being used for that purpose, it cannot be said that the debt in question is consumer debt. Because the $80,000 mortgage is business debt, Pedigo does not have primarily consumer debt, and section 707(b) is inapplicable.

---

**4.** At present, Pedigo is 64 years of age, has health problems that impact his ability to make money, and has an accumulated retirement savings of around $80,000.

Finally, the Court feels this case is deserving of one final note. The evident rationale for amending section 707 to include subsection (b) was to get debtors to pay more of their consumer debts either outside of bankruptcy or in a chapter 13 plan. In this case, neither dismissal nor conversion will serve that end because the only significant debt for which Pedigo seeks a discharge is the Bank One judgment against him for defaulting on a *business* loan. Therefore, categorizing the $80,000 mortgage as a consumer or business debt is entirely irrelevant to that creditor who, as a result of Pedigo's reaffirmation of that debt, will be paid either way. The primary beneficiary of a successful section 707(b) motion, ironically, would be a business creditor. It should also be noted that that creditor is not without remedies and has, in fact, instituted an adversary proceeding contesting the dischargeability of Pedigo's debt.

### Conclusion

Because dismissing Pedigo pursuant to section 707(a) would violate the letter and spirit of the law, the Court finds no cause to dismiss him under that provision. Similarly, because Pedigo does not have primarily consumer debt, section 707(b) is inapplicable to this case. For all of the forgoing reasons, the United States Trustee's Motion to Dismiss is hereby **DENIED**.