In the Matter of Gil E. TALLMAN,
Debtor.

No. 07–12473.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 12, 2008.

Steven J. Ouellette, Fort Wayne, IN, for Debtor.

John L. Horan, Cline, Williams, Wright, Johnson & Oldfather, LLP, Lincoln, NE, for Securities America, Inc.

## DECISION ON MOTION TO DISMISS

ROBERT E. GRANT, Bankruptcy Judge.

The debtor, Gil Tallman, filed a petition for relief under Chapter 7 of the United States Bankruptcy Code shortly after Securities America, Inc. initiated proceedings to confirm a $510,000 arbitration award it received against him from the National Association of Securities Dealers. The matter is before the court following trial of the issues raised by the creditor's motion to dismiss and the debtor's objection thereto. As originally filed, the creditor sought dismissal for cause, pursuant to § 707(a); for abuse, pursuant to § 707(b); and, pursuant to § 105(a), in order to prevent an abuse of process. As actually tried, however, and based upon the arguments in its post trial brief, the motion is limited to the issue of cause under § 707(a).[1] Securities America argues that the debtor's petition was filed in bad faith and that this justifies dismissal of the case.

Section § 707(a) of the United States Bankruptcy Code, 11 U.S.C. § 707(a), does not specifically mention "bad faith" as the basis for dismissing a Chapter 7 case. That term is found only in § 707(b), where the court is allowed to consider whether the debtor filed the petition in bad faith as part of an inquiry into whether granting relief to the debtor would constitute an abuse of the provisions

1. The debtor's debts are not "primarily consumer debts" so § 707(b) does not apply. As for using § 105(a), the concept of "cause" under § 707(a) would seem to be sufficiently capacious that there should be no need to resort to that reservoir of equitable authority. *See, Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *Matter of Dues,* 98 B.R. 434, 437 (Bankr.N.D.Ind.1989) (§ 105 should only be used where other applicable law does not address the situation).

of Chapter 7. 11 U.S.C. § 707(b)(3)(A). Nonetheless, although the issue is not free from debate, *see e.g., In re Padilla,* 222 F.3d 1184, 1191–1193 (9th Cir.2000); *In re Etcheverry,* 242 B.R. 503, 505–06 (D.Colo. 1999); *In re Linehan,* 326 B.R. 474 (Bankr.D.Mass.2005); *In re Pedigo,* 296 B.R. 485 (Bankr.S.D.Ind.2003), rev'd *U.S. v. Pedigo,* 329 B.R. 47 (S.D.Ind.2005), most courts accept the proposition that a debtor's bad faith can constitute "cause" for the dismissal of a case under § 707(a). *See e.g., Perlin v. Hitachi Capital America Corp.,* 497 F.3d 364, 370 (3rd Cir.2007); *In re Zick,* 931 F.2d 1124, 1126–27 (6th Cir. 1991); *In re Lichtenstein,* 328 B.R. 513 (Bankr.W.D.Ky.2005); *In re Horan,* 304 B.R. 42 (Bankr.D.Conn.2004); *In re Lacrosse,* 244 B.R. 583, 587 (Bankr.M.D.Pa. 1999); *In re Smith,* 229 B.R. 895, 897 (Bankr.S.D.Ga.1997); *In re Kragness,* 63 B.R. 459, 465 (Bankr.D.Or.1986). Whether or not bad faith exists or requires the dismissal of a particular case is a matter committed to the court's discretion. *Zick,* 931 F.2d at 1126; *In re Atlas Supply Corp.,* 857 F.2d 1061, 1063 (5th Cir.1988).

Recognizing that bad faith may justify the dismissal of a Chapter 7 case is one thing, trying to identify or articulate what bad faith actually is in the context of a Chapter 7 filing is a much more problematic endeavor. While it is based upon "the totality of the circumstances," *see e.g., In re Perlin,* 497 F.3d 364, 372 (3rd Cir. 2007), *In re Lombardo,* 370 B.R. 506, 511 (Bankr.E.D.N.Y.2007), *McDow v. Smith,* 295 B.R. 69, 78 (E.D.Va.2003), the inquiry is inherently a subjective one. *In re Khan,* 172 B.R. 613, 624 (Bankr.D.Minn. 1994). Yet, one man's trash can be another man's treasure and bad faith, like beauty, is often in the eye of the beholder. Because of this, the reported decisions recognize that it is an issue which must be approached cautiously; that the doctrine is a narrow one, reserved for egregious cases. *See e.g., Perlin,* 497 F.3d at 374; *In re Lombardo,* 370 B.R. 506, 511 (Bankr. E.D.N.Y.2007); *Khan,* 172 B.R. at 622; *In re Sudderth,* 2007 WL 119141 *2, 2007 Bankr.LEXIS 115 (Bankr.M.D.N.C.2007). This prevents the charge of "bad faith" from being too lightly bandied about or becoming little more than a label that can easily be used to brand a debtor whose values do not correspond with those of someone else. *See, In re Huckfeldt,* 39 F.3d 829, 832 (8th Cir.1994).

In an effort to bring some type of objectivity to what is really a subjective inquiry, decisions considering the issue have developed lists of factors deemed worthy of consideration. By themselves, such lists are not particularly helpful. *See, Matter of Plunkett,* 82 F.3d 738, 741 (7th Cir.1996) (laundry lists which do not assign weights or consequences to the factors flunk the test of utility). They have an unfortunate tendency to divert one's attention away from the true purpose of the inquiry and, instead, focus it upon a mass of individual details that one side or the other claims is important. Far too often both courts and litigants embark upon an exercise of tallying up various pluses and minuses, and then pronouncing that something does or does not constitute bad faith, without ever trying to articulate what bad faith is. Doing so is like trying to navigate by sign posts or landmarks without knowing where they are located in relation to where you are going. You can do so all day long, but unless you know where your destination is in relation to the signs you are following you could be going in the wrong direction, or simply going in circles. Context is all important.

To put the point another way, consider Van Gogh's The Starry Night. It is now regarded as a masterpiece, one of his best and most popular works. Painted in

subtle hues of blue and green, it depicts a quiet, country village, nestled at the foot of rolling hills, under a night sky brilliant with luminous stars and a crescent moon; in the foreground a larger, darker object—a cypress tree—dramatically stands out and apart from the nearby village. Yet, just because The Starry Night has these elements, does that mean that every painting of a country village, under a night sky filled with stars, and surrounded by hills and trees is a great work of art? Of course not. In addition to the mechanical recitation of colors and visual elements, less tangible components such as context, placement, style and technique also contribute to the work's overall effect, and without them it would just be so many blobs of color, devoid of meaning or appeal. The same is true of bad faith. It is much more than a mechanical recitation of factors.

So, what is bad faith? And, in particular, what is bad faith in the context of a petition for relief under Chapter 7? Different courts have described it differently. Sometimes, it is simply a matter of smell. *Zick,* 931 F.2d at 1127. Others have characterized it as involving a lack of honesty; a neglect or refusal to fulfill an obligation because of some interested or sinister motive. *In re Oot,* 368 B.R. 662, 668 (Bankr.N.D.Ohio 2007). A more comprehensive description was put forth by Judge Kishel in *In re Khan,* 172 B.R. 613 (Bankr.D.Minn.1994):

> [T]he court should look first at the debtor's manifested attitude toward the integrity of the bankruptcy process.... The real question should be whether the debtor is in bankruptcy with an intent to receive the sort of relief that Congress made available to petitioners under the chapter in question—subject, of course, to any statutory limitations on the extent of that relief—and is willing to responsibly carry out the duties that Congress imposes on debtors as the cost of receiving such relief. *Khan,* 172 B.R. at 625 (citations omitted). *See also, In re Padilla,* 214 B.R. 496, 499 (9th Cir. BAP1997), aff'd *Padilla,* 222 F.3d 1184.

We should also remember that the underlying purpose of any bad faith inquiry is to

protect the integrity of the bankruptcy process, to see that it is not being used for ends other than those for which it was designed. *See, McDow,* 295 B.R. at 77; *Padilla,* 214 B.R. at 499. *See also, Matter of Little Creek Development Co.,* 779 F.2d 1068, 1072 (5th Cir.1986)(discussing bad faith in the context of Chapter 11). With this is mind, the core of a good faith/bad faith inquiry should focus on the debtor's honesty of purpose. *See, In re Johnson,* 708 F.2d 865, 868 (2nd Cir.1983)(good faith in filing Chapter 13). The ultimate question then becomes whether the petition was filed with the intent and desire to obtain the relief that is available under a particular chapter of the Bankruptcy Code, through the means that Congress has specified, or whether the debtor is pursuing some other goal.

█ Before we embark upon the bad faith analysis in this particular case, a word should be said about the "totality of the circumstances" inquiry the court is to conduct and the various factors that have been identified as being worthy of consideration. *See e.g. Zick,* 931 F.2d at 1128; *In re Spagnolia,* 199 B.R. 362, 365 (Bankr. W.D.Ky.1995). Many of those lists and the factors they include were originally created in the context of analyzing whether a petition for relief under Chapter 11, 12, or 13 had been filed in bad faith. *See e.g., Little Creek,* 779 F.2d 1068; *Matter of Grieshop,* 63 B.R. 657 (N.D.Ind.1986); *In re Corp. Deja Vu,* 34 B.R. 845 (Bankr.Md. 1983); *In re Victory Construction Company,* 9 B.R. 549 (Bankr.C.D.Ca.1981). Because the ultimate purpose of any good faith/bad faith inquiry is the same—preserving the integrity of the bankruptcy process—those lists have tended to migrate from their original home into the Chapter 7 analysis. *See e.g., In re Bingham,* 68 B.R. 933, 935 (Bankr.M.D.Pa. 1987) (citing *Furness v. Lilienfield,* 35 B.R. 1006, 1011 (D.Md.1983) (list of factors under chapter 11)); *In re Brown,* 88 B.R. 280, 283–84 (Bankr.D.Hawai'i 1988) (citing *In re Chase,* 28 B.R. 814 (Bankr.Md. 1983)(list of factors under chapter 13)). There is nothing inherently wrong with this migration, but, when it comes to using those lists and applying the factors they contain, one should remember their origin and that the ultimate purpose of Chapters 11, 12, and 13 is very different from the purpose of Chapter 7—as are the means used to achieve those goals. Because of these differences and because the debtor's responsibilities under Chapters 11, 12, and 13 are different from the debtor's duties under Chapter 7, particular factors may have a different weight or a different relevance under different chapters of the Bankruptcy Code. *In re Kragness,* 63 B.R. 459, 465 (Bankr.D.Or.1986). *Cf, Padilla,* 222 F.3d at 1192–93 (noting how the differences between Chapters 11 and 13 and Chapter 7 warrant a different approach to the issue of bad faith).

In Chapters 11, 12 and 13, the debtor is allowed to remain in possession of its assets, and in control of its business, while it has the opportunity to formulate and confirm a proposed plan. Particularly in Chapter 11, this may take a substantial amount of time. So, to offer a very simple example, a debtor who files Chapter 11 solely to take advantage of the automatic stay, without the intent, desire or the ability to propose a plan, might be able to remain under the protection of the bankruptcy court for some time unless there is a way, such as the bad faith inquiry, to quickly test the propriety of the debtor's motivation and goals. In Chapter 7, however, the debtor surrenders possession and control of its property to a trustee, whose control over it and whose prosecutorial powers are much greater than those of a Chapter 12 or 13 trustee; there is also a broader array of weapons immediately

available by which creditors and the trustee can quickly combat misconduct that threatens the integrity of the bankruptcy process, *see e.g.,* 11 U.S.C. §§ 523, 547, 548, 727, and proceedings usually move much more quickly; so there is less danger that a Chapter 7 debtor's abusive plans will long succeed.[2]

Having identified what bad faith is and having established the parameters within which the court should conduct its analysis, the court can proceed to evaluate the various factors Securities America points to as establishing the debtor's bad faith and the basis for dismissing this case. In doing so, we should also remember that it is not the presence or absence of any particular factor that leads to the conclusion that a case has been filed in bad faith, but the cumulative effect of all the relevant factors. *See, In re Spagnolia,* 199 B.R. 362, 365 (Bankr.W.D.Ky.1995).

Movant's first argument is that the debtor has singled out his obligation to Securities America for discharge, that his sole purpose in filing this case was to discharge that particular debt, and that he intends to reaffirm or repay all of his other debts. This is true, but, so what? Debtors are permitted to enter into agreements with creditors reaffirming debts,[3] *see,* 11 U.S.C. § 524(c), and the Bankruptcy Code specifically recognizes that nothing prevents a discharged "debtor from voluntarily repaying any debt." 11 U.S.C. § 524(f). Most of Mr. Tallman's debts represent priority tax claims which will not be discharged anyway, 11 U.S.C. § 523(a)(1), or claims secured by liens upon his home and car. The only debts that do not appear to fall into this category are an unsecured loan (scheduled at $3,700) he took out to pay for medical expenses and a secured debt (scheduled at $10,500) owed to a friend of his wife for the purchase of a jointly owned time-share. More significantly, all of the debtor's other obligations *combined* do not amount to *half* his debt to Securities America. A single debt of more than $500,000 can be just as oppressive as a thousand smaller ones and can make the need for bankruptcy relief just as real.[4]

The second factor Securities America points to is that the debtor filed bankruptcy in direct response to the arbitration award and its efforts to enforce that award. This is true, but, once again, so what? It is not uncommon for debtors to put off filing bankruptcy until there is no other available alternative and the movant does not identify a more appropriate time

2. The court will readily acknowledge that a number of Chapter 7 cases are filed in bad faith as the court has defined it—where the debtor files without the intent or desire to obtain the relief that is available under Chapter 7 and has, instead, some other goal in mind, such as simply to delay creditors. Yet, most of those cases are readily disposed of, either through the automatic dismissal provisions of § 521(i), or for "cause" under § 707(a), such as for the failure to file required statements and schedules or to appear for the 341 meeting of creditors, without being specifically labeled as filed in "bad faith." This is part of the reason the Sixth Circuit concluded that the proper focus of the inquiry under § 707(a) should be on whether the debtor's actions constitute "cause" for dismissal and not whether they should be characterized as bad faith. *See, Huckfeldt,* 39 F.3d at 832. *See also, Padilla,* 222 F.3d at 1192–93.

3. In some instances the debtor must do so in order to retain possession of liened property. *See,* 11 U.S.C. § 521(a)(6). Fulfilling a duty imposed by the Bankruptcy Code should hardly be regarded as a sign of bad faith. Usually the opposite is true—the failure to fulfill those obligations is a sign of bad faith.

4. The debt to Securities America is unsecured and is too large for the debtor to be eligible for relief under Chapter 13. *See,* 11 U.S.C. § 109(e).

for the debtor to have filed.[5] More importantly, the debtor disputed Securities America's claim and actively litigated it, with some success, before the NASD's arbitration panel.[6] The debtor was not required to make an election between litigating and filing bankruptcy. He did not forfeit the opportunity to file bankruptcy by choosing to dispute Securities America's claims. (Indeed, had he won, his bankruptcy would have been unnecessary.) A debtor is not required to concede a creditor's claims in order to preserve the opportunity to seek relief in this court. It may legitimately do both—contest the validity of a creditor's claims before a non-bankruptcy tribunal and then, depending on the outcome of that proceeding, seek relief in this court to deal with the consequences of an unsuccessful defense.

For its third argument, Securities America contends that the debtor has the ability to repay a substantial portion of his debt. Assuming this is true, while a debtor's ability to pay is a factor that can be considered in evaluating the debtor's good faith or lack thereof, it counts for comparatively little in the context of a § 707(a) inquiry. *Perlin,* 497 F.3d at 374 ("bad faith may not be based exclusively or primarily on a debtor's substantial means"). Other factors are more important. Beyond this, the court is not satisfied that the movant has proven that the debtor has the ability to repay a substantial portion of his debt. To begin with, it has never quantified what it means by "substantial portion"—how much are we talking about and over what period of time? It has, admittedly, proven that the debtor has the capacity to earn money, but it has never translated that capacity into any type of return to creditors. Determining whether a debtor has the ability to repay creditors requires knowing more that just what the debtor may be able to earn. The court must also know what, if any, expenses are associated with those earnings, as well as the expenses needed to maintain the debtor and its family. Only after we know what it takes to keep a roof over the head, food on the table and a shirt on the back of the debtor and its family can we determine whether and to what extent the debtor may have the ability to pay creditors. The movant has not advanced an argument based upon this type of information and so, to the extent it matters, the court cannot conclude that the debtor has such an ability.

The movant's next two arguments can be considered together because they both fail for much the same reason. It argues that the debtor has transferred property—primarily commission income and corporate stock—to put it beyond the reach of creditors and that the debtor has failed to accurately disclose his income and assets in his original bankruptcy schedules and statement of affairs. This argument implicates issues addressed by both § 727 and § 548 of the Bankruptcy Code.

The Bankruptcy Code contains a number of provisions that have been designed to protect the bankruptcy pro-

5. In the court's experience, creditors complaining about a debtor's bad faith are able to argue that the debtor filed bankruptcy in response to just about any action they might take, whether it is filing suit, a motion for summary judgment, setting a matter for trial, following trial or judgment or following proceedings to enforce a judgment. Thus, whenever a debtor files it can stand condemned in creditors' eyes. The only way to avoid such criticism would be to file bankruptcy when creditors are not taking any action to collect their debts, and that hardly seems particularly useful.

6. Securities America originally claimed the debtor owed it $1.6 million, but recovered only $510,000.

cess. Two of them are found at sections 727 and 548. 11 U.S.C. §§ 727, 548. Section 727 denies a discharge to debtors who are guilty of different types of misconduct that, if left unchecked, would destroy the systemic integrity of the bankruptcy process and § 548 allows the trustee to recover property the debtor transferred in fraud of creditors.[7] These provisions reflect, and codify, Congress' considered judgment on two points: that particular conduct is not to be tolerated and that such conduct should be responded to in a particular way. They also, at least implicitly, recognize that Congress understood bankruptcy cases could continue, and need not terminate prematurely through dismissal, despite a debtor's misconduct, because the debtor's actions are redressable through other means. Using conduct condemned by § 727 and § 548 as cause for dismissing a case under the rubric of bad faith ignores the remedy Congress created for particular problems, in favor of an alternate design that Congress could have, but did not, put into the statute and would render those portions of the Bankruptcy Code unnecessary. *Cf., Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) ("we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) ("where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

Including conduct redressed by other portions of the Bankruptcy Code as part of the bad faith dismissal analysis distorts the structure Congress designed when it evaluated and created solutions to particular problems. It also risks disrupting the balance between debtors and creditors that Congress strove to achieve when it created those solutions, by allowing debtors to avoid the statutory penalties for misconduct. The denial of a discharge under § 727 is much more than a one time thing. When a discharge is denied because of the debtor's misconduct under § 727, not only does the debtor not get a discharge in that particular case but all of the debts in that case become non-dischargeable in any future case that might be filed. 11 U.S.C. § 523(a)(10). Thus, denial of discharge is the bankruptcy equivalent of a life sentence. But, if the same misconduct that justifies the denial of discharge under § 727 is, instead, used as cause for dismissal under § 707(a), the debtor may avoid the life sentence Congress specified and receive a much lighter penalty. A debtor whose case has been dismissed simply bides its time outside of bankruptcy court and then returns at some later date, after time has cleansed it of the earlier taint, to receive a discharge of both its old and any new debts—something that could not happen if the issue had been addressed under § 727. Admittedly, the court can try to avoid this result through an exercise in creative sentencing, by using § 349(a), but it seems far less complicated and much more appropriate simply to use the right tool for the right job; let provisions like § 727 do the job they were

7. Other provisions with a similar goal of protecting the integrity of the bankruptcy process would include the dischargeability provisions of § 523, which address creditor specific misconduct by excepting certain debts from the scope of any discharge, and § 547, which authorizes the recovery of transfers that undermine the Code's distributional scheme and prevents debtors from (whether consciously or unconsciously) preferring one creditor over another. There are also the criminal provisions found in title 18. *See e.g.,* 18 U.S.C. §§ 152–157.

designed for and use cause under § 707(a) to address other concerns.[8] *See, In re Sherman,* 491 F.3d 948, 974 (9th Cir.2007) ("To respect the complex statutory scheme that Congress has created to deal with malfeasance associated with bankruptcy petitions, we are loath to hold that a factor constitutes 'cause' unless the Bankruptcy Code regime is incapable of righting wrongs of the kind alleged.").

In light of these considerations, the court concludes that when analyzing whether a Chapter 7 debtor is guilty of bad faith constituting cause for dismissal under § 707(a), the court should not consider conduct that is redressed by other portions of the Bankruptcy Code, such as that warranting the denial of discharge under § 727(a).[9] *Accord, Padilla,* 222 F.3d 1184; *Sherman,* 491 F.3d at 970. *See also, In re Gonyer,* 383 B.R. 316, 320–321 (Bankr.N.D.Ohio, 2007); *Khan,* 172 B.R. at 624–25. If a debtor is guilty of conduct condemned by § 727(a), the proper response is to seek denial of discharge, not dismissal as a bad faith filing.[10]

Movant's complaints concerning the debtor's pre-petition transfers and inaccuracies in the schedules and statement of affairs are addressed by § 727(a)(1) and § 727(a)(4)(A). A debtor who transfers property with the intent to hinder, delay or defraud creditors, or a representative the estate, can have its discharge denied. 11 U.S.C. § 727(a)(1). So too a debtor that knowingly and fraudulently makes a false oath in connection with the case. 11 U.S.C. § 727(a)(4)(A). Misconduct of this type should be the subject of a complaint objecting to a Chapter 7 debtor's discharge and not, under the guise of bad faith, a motion to dismiss for cause under § 707(a).[11]

8. In a similar fashion, the statutory penalty for misconduct in connection with incurring a debt to a particular creditor is to except that debt from the scope of discharge, *see,* 11 U.S.C. § 523(a), not to deny the debtor access to a bankruptcy proceeding by dismissing the case. *Padilla,* 222 F.3d at 1192–93; *Gonyer,* 383 B.R. at 320–21.

9. Section 727 does not apply to cases under Chapters 12 and 13 and it applies only indirectly to Chapter 11, through § 1141(d)(3), even then, however, the time to raise the objection comes much later in the case. *See,* Fed. R. Bankr.P. Rule 4004(a). Because of this, such issues are relevant to the bad faith inquiry in those Chapters, but not in Chapter 7. Similarly, unlike Chapter 7, there usually is no trustee in a Chapter 11 case and the avoiding powers of Chapter 12 and 13 trustees may be limited by or depend upon the terms of a confirmed plan. This makes the need for an early consideration, via a motion to dismiss, of the possibility of recoverable transfers under 547 and 548, which the debtor might have been complicit in making and might not vigorously pursue, more important in cases under Chapter 11, 12 and 13 than it is in Chapter 7.

10. The same is true of conduct addressed by § 548. If the debtor has made fraudulent transfers that are avoidable under § 548, the proper response is to seek their recovery and not to use them as evidence of bad faith and cause to dismiss the case. To use them as them as the basis for dismissal defeats the purpose of making them avoidable, which is to recover the property so that it can be distributed to all creditors. Dismissing the case runs the risk that the transfer may not be avoided or, if it is, will be avoided only for the benefit of a single creditor, not for the entire creditor body.

11. Movant never specifically contends that the debtor violated the provisions of § 727, but its arguments do have a 727 esque character to them and certainly suggest that to be the case. Yet, if the actions complained of do not run afoul of § 727—transfers were made but without the intent to hinder, delay or defraud and inaccurate statements were not knowing and fraudulent—they should not constitute cause for dismissing the case. *See, Sherman,* 491 F.3d at 970–71 ("If another Code provision addresses the general type of misconduct but does not cover the actual misconduct, that omission is best understood as

Securities America's final argument is that the debtor failed to make any significant lifestyle adjustments which would permit him to pay. Much of this argument is premised upon conduct addressed by § 727(a)(5), the failure to explain. *See,* 11 U.S.C. § 727(a)(5). Movant points to an inheritance the debtor received in 2005, money in various accounts, and the debtor's 2006 income, little of which was left by the time the debtor filed bankruptcy. This is exactly the scenario that § 727(a)(5) was designed to combat. *See e.g., In re Bryson,* 187 B.R. 939, 955–56 (Bankr.N.D.Ill. 1995). As such, it should have been the subject of a complaint objecting to discharge and not restyled as cause for the dismissal of the case under § 707(a). Thus, the court will not consider it as part of its bad faith analysis of the debtor's filing.

Shorn of complaints concerning assets that are no longer available, movant's argument that the debtor should have adjusted his lifestyle has very little to it. There is no evidence that the debtor or his family has indulged in a lavish standard of living or have consistently been living beyond their means. Their home has a value of no more than $220,000 and the only particular expense that has been singled out for criticism is the time share in Hawaii, purchased from his wife's friend. While the debtor and his family have obviously enjoyed a comfortable living, the information before the court does not suggest a free-spending debtor who has pursued a lavish lifestyle it could not afford, all the while ignoring obligations to creditors. It is not indicative of bad faith.

Considering all the relevant information bearing on the issue, the court cannot find that the petition initiating this case was filed in bad faith. Quite to the contrary, the court's overall impression of the debtor is that he is an individual who was successfully meeting his obligations to creditors until he unexpectedly ended up on the receiving end of a judgment for more than half a million dollars. To deal with that event, he found it necessary to seek relief under Chapter 7 and is ready, willing and able to properly fulfill all the responsibilities that come with having done so. Rather than having been filed in bad faith, debtor's petition was filed with the intent and the desire to obtain the relief that is made available under Chapter 7, through the means specified for doing so. The motion to dismiss will be denied. An order doing so will be entered.

demonstrating that Congress did not mean to reach the actual misconduct at issue. Any other approach would preclude bankruptcy relief in circumstances in which all indications suggest that Congress made a consid-

ered decision about the coverage of the Code and intended to provide bankruptcy relief."). Section 707(a) is not § 727 lite; it is not a vehicle for punishing conduct that does not measure up to what § 727 forbids.