NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2012[*]
Decided February 2, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-3193

| | |
|---|---|
| ANTHONY STELMOKAS, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 11 C 3600 |
| VYTAUTAS KODZIUS, | |
|     *Defendant-Appellee.* | Amy J. St. Eve |
| | *Judge.* |

## O R D E R

Anthony Stelmokas filed an adversary action seeking to prevent the discharge in bankruptcy of a $14,000 debt owed to him by Vytautas Kodzius. After a bench trial, the bankruptcy court found for Kodzius and also ordered Stelmokas to pay the $5,000 in attorney's fees incurred by Kodzius in defending the suit. The district court upheld both rulings, and Stelmokas appeals. We agree with the bankruptcy court's finding that Stelmokas failed to establish that the debt was exempt from discharge, but we conclude that the award of fees is not supported by the record.

---

[*]Appellee Vytautas Kodzius, who is represented by counsel, elected not to file a brief. After examining the appellant's brief and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the appellant's brief and the record. See FED. R. APP. P. 34(a)(2)(C).

Stelmokas owns Club Gintaras, a Chicago tavern that also serves as the headquarters of his side business of making "payday loans" and cashing third-party checks. Kodzius and Vilma Madson, who lived with him, are the sole shareholders of V & V Construction. In 2006 Kodzius and Madson began taking checks payable to V & V Construction to Stelmokas to be cashed. By the end of 2008, Stelmokas had cashed checks totaling nearly $578,000, keeping 1% as a fee for his services. In March 2008 he loaned $11,650 to Kodzius at an interest rate of 1% weekly. The loan, which was memorialized by a personal check made payable to Stelmokas in that amount, was to be repaid within a matter of weeks. But apparently the check was no good, and nine months passed without payment. In December 2008, Kodzius and Madson renegotiated the loan, executing a promissary note due in June 2009 for a principal amount of $14,000 plus interest at a 12% annual rate. But the renegotiated loan was never repaid, even though Kodzius and Madson continued using Stelmokas to cash over $50,000 in checks payable to V & V Construction. In July 2009 Kodzius and Madson separately filed for bankruptcy under Chapter 7. Kodzius listed the debt to Stelmokas on his schedule of unsecured, nonpriority claims and listed his stock in V & V Construction as an asset worth $600.

In Kodzius's Chapter 7 case, Stelmokas filed, through counsel, an adversary complaint seeking a ruling that the $14,000 debt was made nondischargeable by 11 U.S.C. § 523(a)(2)(A).[1] Section 523(a)(2) provides an exception to discharge "from any debt . . . for money . . . or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." Stelmokas alleged that he made the loan only because Kodzius had been deceptive about his poor financial condition and intention to default. Later, after discharging his lawyer, Stelmokas represented himself at a bench trial on the adversary complaint. During that trial he testified that the large number of checks that he cashed for Kodzius and Madson had induced him to make, and later extend, the loan by creating the mistaken impression that V & V Construction was a healthy business. Stelmokas also said that when he made the loan he believed that Kodzius owned two houses, but later discovered that one of those homes had gone into foreclosure, and the mortgage on the other was in arrears.

Stelmokas further testified that, before extending the loan, he had asked Kodzius if he would repay him when the loan matured, and Kodzius had said, "Yes." He then asked Kodzius "Are you going to have any problems paying it?" to which Kodzius replied, "No." Stelmokas submitted documents to the court showing that, at the time Kodzius made those

---

[1]A second claim included in Stelmokas's adversary complaint later was abandoned.

statements, he had not paid his mortgage for at least two months and went into foreclosure shortly after obtaining the loan. Stelmokas insisted that this omission was a misrepresentation that caused him to make the loan.

At the close of the bench trial, the bankruptcy judge ruled in favor of Kodzius. The court explained that, under § 523(a)(2)(A), even debts obtained through oral misrepresentations are dischargeable if the debtor's statements concerned his financial condition. The judge noted that she had rejected a similar argument by Stelmokas in a proceeding against a different debtor, see *Stelmokas v. Kupciunas*, No. 09-00307 (Bankr. N.D. Ill. Jan. 30, 2010), and that she was aware that he had presented this argument without success to at least one other bankruptcy judge.

After the trial Kodzius moved for attorney's fees under § 523(d), which provides that the debtor should be awarded attorney's fees if, without a basis that is "substantially justified," a creditor "requests a determination of dischargeability of a consumer debt under subsection (a)(2)." Stelmokas filed a written response arguing that the fees request was premature because the bankruptcy court had not ruled on his motion to reconsider the decision in the adversary proceeding. When that contention was rejected by the bankruptcy court at a hearing on the fees request, Stelmokas tried to present what he characterized as a "defense" to the application of § 523(d). The bankruptcy judge stopped him, telling him that all arguments omitted from his written response were waived. The court ordered Stelmokas to pay Kodzius $5,000 in attorney's fees.[2] The court reasoned that his position in the case against Kodzius was not substantially justified and expressed concern about the number of comparable cases Stelmokas had filed.

Stelmokas appealed to the district court, which upheld the decisions on both his adversary complaint and the award of attorney's fees. In this court he maintains again that because Kodzius's oral assurances that he could repay the loan were "unconditional and unequivocal" they should be regarded as misrepresentations under § 523(a)(2)(A). But that contention misses the point. Section 523(a)(2)(A) provides that even a debtor who induces a

---

[2] Stelmokas filed an identical adversary complaint in Madson's Chapter 7 case. See *Stelmokas v. Madson*, No. 11 C 3649, 2011 WL 4738263 (N.D. Ill. Oct. 5, 2011). Stelmokas voluntarily dismissed that complaint, but that did not stop the bankruptcy judge (the same judge who presided over Kodzius's case) from ordering Stelmokas to pay Madson $3,000 to cover attorney's fees. Stelmokas's appeal from that award of fees was assigned to a different district judge, who also affirmed the bankruptcy court's ruling. *Id*. Stelmokas did not file a notice of appeal from the district court's decision, and the allotted time for appeal has now expired. See FED. R. APP. P. 4(a)(1).

debt through misrepresentation has an escape hatch: The debt is still dischargeable if the claim of false pretenses, false representation, or actual fraud rests on "a statement respecting the debtor's . . . financial condition." *In re Joelson*, 427 F.3d 700, 705 (10th Cir. 2005); *In re Bogdanovich*, 292 F.3d 104, 112–13 (2d Cir. 2002); *In re Kosinski*, 424 B.R. 599, 607–08 (B.A.P. 1st Cir. 2010). That is the situation here.

The few appellate decisions on point have taken different approaches in defining what constitutes a statement respecting the debtor's financial condition. The narrow view is that the statement must paint a picture about the debtor's *overall* financial health, while the broad view encompasses statements of that nature along with any other that conveys significant information about the debtor's finances. See *In re Jorelson*, 427 F.3d at 705 (narrow view); *In re Bogdanovich*, 292 F.3d at 112 (noting inconsistent views but declining to choose); *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060, 1061 (4th Cir. 1984) (broad view). We have not yet addressed the question, although we note that a majority of bankruptcy courts in this circuit have opted for the narrow construction. Compare *In re Cassel*, 322 B.R. 363, 374–75 (Bankr. C.D. Ill. 2005) (narrow); *In re Olinger*, 160 B.R. 1004, 1009 (Bankr. S.D. Ind. 1993) (narrow); *In re Price*, 123 B.R. 42, 54 (Bankr. N.D. Ill. 1991) (narrow), with *In re Rhodes*, 93 B.R. 622, 624 (Bankr. S.D. Ill. 1988) (broad). But we need not resolve the question here, because neither construction helps Stelmokas, who bore the burden of proof on this issue. See *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007). The only evidence of misrepresentation he introduced was Kodzius's statement that he would not have any trouble repaying the promissory note. Even assuming that Kodzius believed otherwise—he was, after all, weeks away from a foreclosure action—his representation still was one concerning his "overall financial health."

Stelmokas also observes that Kodzius's continued use of his check-cashing services for V & V Construction after executing the promissory note shows that Kodzius had access to money that could have been used to repay the loan. The fact that no payments were made during the period when those checks were cashed, Stelmokas insists, demonstrates that Kodzius intended from the start to defraud him. See 4 COLLIER ON BANKRUPTCY ¶ 523.08.[1][d], at 46 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (explaining that debtor's failure "to take any steps to perform" contractual duties may create inference assurances of intent to perform were misrepresentations). But the promissory note did not obligate Kodzius to pay in installments, and, in any event, Stelmokas cannot use circumstantial evidence to demonstrate Kodzius's intent to defraud if he cannot prove any fraudulent act by Kodzius. And Stelmokas has not identified any false statement or misrepresentation made by Kodzius that is not exempted by the escape clause of § 523(a).

Stelmokas also argues that the bankruptcy judge erred by awarding attorney's fees to Kodzius. Not only was his adversary action substantially justified, says Stelmokas, but

§ 523(d) is limited to attempts under § 523(a)(2) to avert discharge of *consumer* debt. See *In re Sheridan*, 105 F.3d 1164, 1166 (7th Cir. 1997). The latter contention is dispositive.

The bankruptcy code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The bankruptcy court never made an express finding about the nature of the debt, which Stelmokas insists was for Kodzius's business. Thus, explains Stelmokas, the debt was not a consumer debt and the award of fees under § 523(d) was improper.

Before addressing this contention, we must decide if it was waived or forfeited. Stelmokas did not include this objection in his written response to Kodzius's demand for fees, and when he sought to articulate his "defense" to that demand, the bankruptcy judge cut him off and asserted that any objection omitted from the written response was waived.[3] The judge did not cite authority for this position, and we know of no precedent from this court supporting it. Generally "[a] formal response to a motion is not obligatory except when the federal rules or local rules specifically require affidavits or other papers to be filed in opposition or when directed by the district judge." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1190 (3d ed. 2004). No bankruptcy rule required a written response to the § 523(d) motion, and neither did the bankruptcy judge order a response or give Stelmokas advance warning that any argument omitted from his response would be deemed waived. Cf. *Timms v. Frank*, 953 F.3d 281, 285 (7th Cir. 1992) (holding that *pro se* litigants are entitled to notice of the consequences of failing to respond to a motion for summary judgment). We also note that, although the bankruptcy court is not generally required to follow the local rules of the district court, see BANKR. N.D. ILL. R.1000–2(C), the local rules for the Northern District of Illinois state that failure to respond to a motion does not waive an argument, N.D. ILL. R. 78.3. We conclude that Stelmokas did not waive or forfeit his argument by waiting until the hearing to raise it.

The district court declined to adopt the bankruptcy judge's reasoning on the waiver issue. Instead, the district judge concluded on its own that Stelmokas's argument about the

---

[3]The bankruptcy judge interrupted Stelmokas before he could describe his intended "defense." Consequently, we cannot be certain that the argument he wanted to make is the one he presents here. But during this litigation Stelmokas has never offered a different merits defense to the § 523(d) motion (aside from a general assertion that his claim under § 523(a)(2) was "substantially justified"). And given that he was prevented from putting his defense on the record, we will give Stelmokas the benefit of the doubt and assume that his consumer-debt argument is what he tried to raise in the bankruptcy court.

nature of the debt had been waived *on appeal* because it had not been developed adequately in his brief. See *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010). We disagree with that analysis as well. As presented in his brief to the district court, Stelmokas's argument is short and straightforward, but that does not make it "perfunctory." See *id.* He provided a citation to the allegedly misapplied statute and the portions of the record supporting his contention that his loan to Kodzius and Madson was outside the scope of § 523(d). Counsel for Kodzius acknowledged and addressed this argument in his appellee's brief. This is enough to stave off waiver or forfeiture.

As the proponent of fees under § 523(d), Kodzius bore the burden of demonstrating the factual basis for them. See *Am. Express Travel Related Servs. Co., v. Baker*, 213 B.R. 834, 837 (N.D. Ill. 1997). The bankruptcy judge apparently found that the loan was a consumer debt—otherwise it would not have granted the motion—and we review that finding for clear error. See *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010).

We conclude that the bankruptcy judge erred in finding that Kodzius met his burden to show that the debt to Stelmokas was a consumer debt. Because the judge improperly refused Stelmokas the opportunity to advance this argument, the record discloses little about why Kodzius obtained the loan. Kodzius checked a box on his form bankruptcy petition stating that his debts were "primarily" consumer debts, see 11 U.S.C. § 707(b), but this proves nothing about the nature of the Stelmokas loan, which accounted for only $14,000 of Kodzius's nearly $60,000 in unsecured debts. Courts generally have held that debts are "primarily" consumer when at least half of them are consumer debts. See *In re Stewart*, 175 F.3d 796, 808 (10th Cir. 1999); *In re Kelly*, 841 F.2d 908, 913 (9th Cir. 1988); see also *In re Pedigo*, 296 B.R. 485, 490 (Bankr. S.D. Ind. 2003), *rev'd on other grounds*, 329 B.R. 47 (S.D. Ind 2005).

The only direct evidence in the record about the nature of the loan is Stelmokas's trial testimony (given before the § 523(d) motion was filed) that the loan was a business loan sought for the purpose of funding the continuing operations of V & V Construction. Kodzius's attorney did not object to that testimony, cross-examine Stelmokas on the issue, call Kodzius or Madson to rebut the testimony, or introduce any other contradicting evidence. Nor did the bankruptcy judge find that Stelmokas's testimony on the subject was not credible. Thus the business character of the loan was undisputed, and the bankruptcy judge erred by concluding that Kodzius met his burden to demonstrate the factual basis for attorney's fees under § 523(d). Given this conclusion, we need not decide whether the bankruptcy judge was correct in concluding that Stelmokas's adversary action was not substantially justified.

Accordingly, we REVERSE the district court's decision upholding the award of attorney's fees to Kodzius. In all other respects, the judgment is AFFIRMED.